Filed 7/16/26  P. v. Young CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085748 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD302405) |
| v. | |
| MARCO CLASEN YOUNG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Donald W. Ostertag and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Marco Clasen Young guilty of two counts of forcible rape (Pen. Code, § 261, subd. (a)(2))[1] (counts 1 and 2) and one count of simple assault (§ 240) as a lesser included offense to the charged offense of rape of an intoxicated person (§ 261, subd. (a)(3)) (count 3). With respect to counts 1 and 2, the jury found true the allegation that the victim was a minor 14 years of age or older within the meaning of section 264, subdivision (c)(2). The trial court sentenced Young to an aggregate term of 18 years in prison, consisting of midterm sentences of nine years each on counts 1 and 2 to be served consecutively and at full strength under section 667.6, subdivision (d)(1). In imposing these sentences, the court stated that it declined to find that Young's youth was a contributing factor to his commission of either offense under section 1170, subdivision (b)(6). The court further stated that, even if it were to find that Young's youth was a contributing factor, the aggravating factors so far outweighed the mitigating factors that it would not be in the interest of justice to impose the low term on either count. The court also imposed a concurrent term of 180 days on count 3, with credit for time served.

On appeal, Young claims that the trial court abused its discretion in imposing midterm sentences on counts 1 and 2. In support of this contention, Young maintains that the court's finding that his youth was not a contributing factor in his commission of the offenses is contradicted by the record and constitutes prejudicial error.

We find no error and affirm.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

2

FACTUAL AND PROCEDURAL BACKGROUND

A. *The jury trial*

   1. *The People's evidence*

      a. *Count 1*

A.Q. met Young in 2017 when she was 15 years old. One day in October of that year, the two made plans to see each other.

A male friend of Young's drove him and two other males to A.Q.'s apartment and picked her up. The group went to a liquor store and the males bought a bottle of vodka. Everyone in the group drank the vodka. The group went to a park. While at the park, the vodka bottle was not always in A.Q.'s possession. When A.Q. took a sip from the near empty bottle, the vodka tasted bitter and had a powdery substance.

A.Q. suspected that "something was wrong" since she knew about "things getting put into drinks." Soon thereafter, A.Q. "was on the floor with the four guys, like, pinning [her] down." Young got on top of A.Q. and penetrated her vagina with his penis.

A.Q. was terrified. She was crying and screaming at Young to stop, but he continued to rape her.

      b. *Counts 2 and 3*

In the summer of 2019, Young met 15-year-old M.B. and 17-year-old A.M. at the beach. M.B. and A.M. were friends.

M.B., A.M., and another female friend went to Young's house on a day in July of that summer. When they arrived, Young gave the girls alcohol. The group went to a rooftop balcony, where the girls kept drinking. A.M. "was incredibly intoxicated" and was "[h]aving trouble walking."

Young told A.M. there was more alcohol downstairs and he "forcefully led [A.M.] down the stairs." Once downstairs, Young directed A.M. to a

3

bedroom, where she drank more alcohol. A.M. explained that she "felt very inebriated" and was "coming in and out of consciousness." A.M. laid down on a bed. Young grabbed A.M. and engaged in intercourse with her for about ten minutes.

M.B. and her friend came to the kitchen looking for A.M. A.M. emerged from Young's bedroom and Young "grabbed [M.B.] into the room."

Young told M.B. to undress and to lay on the bed. She was scared of what might happen next. After M.B. was naked, Young had M.B. lie on her back and he put his penis in her vagina. M.B. twice told Young to stop, but he continued to have sex with her. At some point, Young stopped having intercourse with M.B. and told her to get out of the bedroom. M.B. was in a lot of pain and it was hard for her to walk out of the room. She was "crying a lot."

2. *The defense*

Young testified at trial. He stated that he had consensual sex with A.Q. about a week before the day of the charged rape. Young claimed, however, that he had not had sex with A.Q. on the evening of the charged rape, but that he saw one of his friends having sex with her at the park that evening.

Young stated that during the encounter with A.M., M.B. and their friend, he had consensual sex with A.M., and that shortly thereafter he had consensual sex with M.B.

B. *Sentencing proceedings*

1. *The probation report*

Before sentencing, the probation department filed a report. The report listed the fact that Young was under 26 years of age at the time of the offenses as a possible circumstance in mitigation under California Rules of

4

Court, rule 4.423(b)(6). The report also listed three possible circumstances in aggravation: (1) Young took advantage of a position of trust to commit the offenses (*id*., rule 4.421(a)(11)); (2) he had engaged in violent conduct that indicated a serious danger to society (*id*., rule 4.421(b)(1); and (3) Young had committed an uncharged sexual assault in November 2015 (*id*., rule 4.408(a)).

The probation report recommended that the court impose an aggregate sentence of 18 years in prison on counts 1 and 2.

2. *The parties' pre-sentence briefing*

Before sentencing, the parties filed briefs with the court. In their sentencing brief, the People argued that the court should impose an aggregate sentence of 18 years on counts 1 and 2.

The People contended that the following five aggravating circumstances were present: (1) the crimes involved great violence, a degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) the victims were particularly vulnerable (*id*., rule 4.421(a)(3)); (3) the manner in which the crimes were carried out indicated planning, sophistication and professionalism (*id*., rule 4.421(a)(8); (4) Young took advantage of a position of trust to commit the offenses (*id*., rule 4.421 (a)(11)); and (5) Young engaged in violent conduct that indicated a serious danger to society (*id*., rule 4.421(b)(1). The People further maintained that the only mitigating circumstance was that Young had no prior criminal record (*id*., rule 4.423(b)(1)).

The People argued that the court "should elect the middle term and not the low term in sentencing the defendant" for the following reasons: "[Young] preyed on underage girls, provided them alcohol, and forcibly raped them. Not only did Young engage in this horrific behavior once, but he did so three

5

times. This is not conduct worthy of any benefits, especially the granting of having the lower term be imposed." (Some capitalization omitted.)

Young filed a statement in mitigation in which he requested that the court sentence him to an aggregate term of 14 years. Young maintained that there was "no doubt" that his youth had contributed to his commission of counts 1 and 2. In support of this contention, Young argued that he "was abusing drugs and alcohol at that point in his life, was immature, and was not thinking through the consequences of his actions."

Young further argued that, if the court were to find that his youth was a contributing factor with respect to counts 1 and 2, the trial court could not sentence him to an upper or middle term sentence because the People had never alleged, nor had Young stipulated to, any aggravating factors. Young contended that, under these circumstances, "the court must sentence [him] to the low term of seven years on each of the felony counts." (Italics omitted.)

Young also claimed that three circumstances in mitigation existed: (1) he was suffering from numerous mental conditions at the time of the offenses, including several substance abuse disorders and an unspecified trauma disorder (Cal. Rules of Court, rule 4.423(b)(2); (2) he had no prior criminal record (*id*., rule 4.423(b)(1)); and (3) he was under 26 years of age at the time of the offenses (*id*., rule 4.423(b)(6)).

Along with his statement in mitigation, Young filed several letters from family members attesting to his good character. Young also lodged a psychological report.

3. *The parties' arguments at the sentencing hearing*

At the sentencing hearing, defense counsel stated that Young had changed considerably in recent years, emphasizing that he "became very religious in 2020" and he had "turned his life around for the better." Defense

6

counsel also reiterated the argument that, since there were "no aggravating factors found at [the] jury trial," the court "ha[d] to give the low term."

Young also spoke at the hearing. He stated, "I do respect that we have such a system in place in this country to decide matters in the judicial system, the type of affliction that has been really difficult from being defamed by, quote, unquote, a sex offender at 26 years old, the harsh conditions of imprisonment, and being away from my loved ones." Young also stated that after graduating high school he had been "with the wrong crowd" and that he had been "promiscuous which often resulted in heartbreaks and shame and using drugs, which resulted in energy-draining addiction." Young stated, however, that, when he had turned 21, he "wanted a change," and that he had since "sobered up." He also repeatedly emphasized how religion had shaped his life, noting that he had been "edified by the word of God."

In his remarks, the prosecutor argued that the court was not required to sentence Young to the lower term merely because the People had not "allege[d] and prove[d] an aggravating factor." The prosecutor also read a statement that A.M. had written pertaining to how Young's actions (count 3) had impacted her.

The prosecutor also reiterated that both the People and the probation officer recommended that Young be sentenced to full strength consecutive middle terms of nine years each on counts 1 and 2, for a total sentence of 18 years. In support of this contention, the prosecutor argued this was not a case of "promiscuity" as Young had suggested, but of rape, committed by a person "preying on young women in a very calculated way." The prosecutor also asked the court to find, "under [section] 1170[, subdivision] (b)(6) that the aggravating circumstances do in fact outweigh the mitigating

7

circumstances . . . and that the low term would be contrary to the interest of justice."

4. *The trial court's imposition of sentence*

After detailing the documents that the court had reviewed, and the circumstances of the offenses, the trial court noted that the parties disputed whether the court should impose the lower or middle term on counts 1 and 2. The court further observed that, in presenting their arguments pertaining to the fact that Young had been a youth at the time of the offenses, "both parties miss[ed] an essential step." The court explained that the presumption contained in section 1170, subdivision (b)(6) only applied if Young's youth was a "contributing factor" in the commission of an offense.

And, with respect to that issue, the trial court found that Young's youth was not a contributing factor to his commission of the offenses. The court reasoned: "The law recognizes that people under 26 may be more impulsive, their brains not fully functioning to reason out good decision making, and that's why we have this factor. These were not crimes of impulse. These were crimes of domination. They were crimes of taking something away from somebody else. They were planned. They were deliberate."

The trial court continued, "But even if the Court found that Mr. Young's age was a contributing factor, I would find that the aggravating factors so far outweigh the mitigating factors that it would not be in the interest of justice to impose the low term." The court began by explaining that aggravating factors used to choose a middle term need not be proved beyond a reasonable doubt. Next, the court noted that the fact that Young had an insignificant record of prior criminal conduct constituted a mitigating circumstance. The court rejected, however, Young's contention that his

8

mental disorders referenced in the statement of mitigation contributed to his actions in the case.

The trial court further found the presence of five circumstances in aggravation referenced in the California Rules of Court, ruling as follows: "[U]nder rule of court 4.421(a)(2) . . . the crime involved great violence and acts disclosing a high degree of cruelty, viciousness, or callousness. And it wasn't just in the rape of these women but in the way that he treated each of them thereafter the completion of the incidents. Under 4.421(a)(3), the victims were particularly vulnerable. They were isolated. They were intoxicated. And they were intoxicated based on liquor that the older defendant supplied to them. [4.421](a)(4), that the defendant induced others to participate in the commission of the crime or there were other people at certainly for the first incident that were involved. 4.421(a)(11), that Mr. Young took advantage of a position of trust or confidence to commit the offense. Each of these girls thought they were being invited to hang out with the defendant; that they were going to have some time with somebody they were interested in. And they placed themselves in situations where they're isolated from other members of the community because they trusted that they were in good hands. 4.421(b)(1), that the factors indicate that the defendant has engaged in violent conduct that indicates a serious danger to others."

The court then added that it could also consider "the lack of remorse," noting that "[t]here is nothing indicated by Mr. Young that there is any empathy for the victims." Rather, the court stated, Young thought that this case "is a result of defamation," and "his promiscuity," and that "he is the aggrieved party."

In light of all of this, the court reaffirmed that, even if a section 1170, subdivision (b)(6) factor (i.e. Young's youth) had contributed to his commission of an offense, "the aggravating circumstances would far outweigh the mitigating circumstances such that imposition of the low term would be contrary to the interest of justice." Thus, the court stated that it would select the middle term on counts 1 and 2.

Finally, the court briefly reviewed Young's statements to the probation officer that the court found revealed Young's lack of empathy and remorse as well as findings from the psychological report submitted by the defense that the court stated gave it "pause." Ultimately, the court sentenced Young to an aggregate sentence of 18 years, consisting of midterm sentences of nine years on counts 1 and 2 to be served consecutively and at full strength.

## DISCUSSION

*The trial court did not abuse its discretion in imposing midterm sentences on the forcible rape counts*

Young claims the trial court abused its discretion in imposing midterm sentences on the forcible rape counts (counts 1 and 2). Specifically, Young maintains that the court's finding that his youth was not a contributing factor to his commission of the rapes is not supported by substantial evidence in the record. Thus, Young contends it was an abuse of discretion for the court to base its decision to impose midterm sentences on this finding.

A. *Forfeiture*

The People contend that Young forfeited his claim of sentencing error. The People note that under *People v. Scott* (1994) 9 Cal.4th 331, a defendant waives any claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices by failing to object when sentence is announced. And, while the People acknowledge that Young

10

"ask[ed] for the low term before the trial court announced its sentence," they maintain that he failed to object to the court's stated reasons for imposing the middle term. (Italics omitted.)

We are skeptical of the People's forfeiture argument for multiple reasons. Most importantly, as the People acknowledge, Young urged the trial court to apply section 1170, subdivision (b)(6) in his statement in mitigation and argued at the sentencing hearing that the court was required to impose the low terms on the forcible rape counts given Young's youth. Moreover, the trial court expressly considered whether to impose midterm sentences on the forcible rape counts given Young's youth under section 1170, subdivision (b)(6). Under these circumstances, even assuming that Young forfeited the claim he seeks to raise on appeal, we exercise our discretion to consider it. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)

B. *Governing law*

Section 1170, subdivision (b)(1) provides in relevant part, "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term."

Section 1170, subdivision (b)(6), however, limits a trial court's discretion to impose a middle term and instead "creates a presumption that the sentencing court 'shall' enter a lower term sentence" under certain circumstances. (*People v. Salazar* (2023) 15 Cal.5th 416, 419.) As relevant here, section 1170, subdivision (b)(6) provides:

> "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall

11

order imposition of the lower term if any of the following was a *contributing factor* in the commission of the offense:

[¶] . . . [¶]

"(B) The person is a youth or was a youth as defined under subdivision (b) of [s]ection 1016.7[2] at the time of the commission of the offense."  (Italics added.)

"As made plain by the statutory text, the mere fact a defendant is young . . . is insufficient" to trigger the presumption.  (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)  Instead, the defendant's youth "must be 'a contributing factor in the commission of the offense' for the low term presumption to apply."  (*Ibid.*; accord *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 991 ["The statute does not mandate a presumption in favor of the lower term in every case in which the defendant was under age 26 at the time the crime was committed"].)

"Although section 1170[, subdivision] (b)(6) requires a finding that the defendant's qualifying condition was a contributing factor to the offense, the Legislature set a relatively low threshold for this finding.  [Citations.]  The qualifying condition may be remote in time, the connection may be indirect, and the evidence of it may be less than straightforward."  (*People v. Lopez-Tapia* (2026) 120 Cal.App.5th 690, 699 (*Lopez-Tapia*), citing *People v. Nielsen* (2026) 119 Cal.App.5th 816, 824 (*Nielsen*) [concluding that record contained

---

2    Section 1016.7, subdivision (b) defines a "youth" as "any person under 26 years of age on the date the offense was committed."

12

"a sufficient initial showing to establish that defendant's childhood trauma[3] contributed to his drug addiction and to his convictions in this case."].)

As in *Nielsen*, in *Lopez-Tapia*, the Court of Appeal considered whether there was sufficient evidence of childhood trauma (§ 1170, subd. (b)(6)(A)) to trigger the application of the lower term presumption. (*Lopez-Tapia, supra*, 120 Cal.App.5th at pp. 698–701.) While agreeing with the defendant that the record contained sufficient evidence to support a finding that the defendant's childhood trauma led to his "gang entry" (*id.* at pp. 699–700), the *Lopez-Tapia* court found that there was insufficient evidence that the defendant's gang affiliation led to his commission of the offense at issue — witness dissuasion. (*Id.* at p. 701.) The court reasoned in part: "[W]e are not persuaded that section 1170[, subdivision] (b)(6) requires a court to find that childhood trauma is a contributing factor to any offense accomplished through gang connections simply because trauma may have been a contributing factor in the defendant joining a gang in the first place. The threshold for a contributing factor may be low, but it permits more nuanced judgment than Lopez-Tapia offers by this syllogistic rule. There was no suggestion here, for example, that Lopez-Tapia was subject to gang pressure to commit the offense, or that the circumstances of or motives for its

---

3    As paragraph (B) of section 1170, subdivision (b)(6) does with youth, paragraph (A) of section 1170, subdivision (b)(6) establishes a presumption in favor of the lower term where childhood trauma was a contributing factor in the commission of the offense. (See § 1170, subdivision (b)(6)(A) ["The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence"].)

13

commission were connected somehow to the nature of his childhood trauma." (*Id*. at p. 700.)

C. *Standard of review*

We assume for purposes of our decision that Young is correct that the substantial evidence standard of review applies to his claim. (Citing and quoting *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080 [" 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence' "].)

In applying this standard, we " 'review the whole record in the light most favorable to the judgment below to determine whether it discloses *substantial evidence* — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact' " could find that the Young's youth was not a contributing factor to his commission of the offenses. (*People v. Cuevas* (1995) 12 Cal.4th 252, 260.)

In making this determination, we "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) In addition, since " 'it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends,' " in reviewing the trial court's ruling, " '[w]e resolve neither credibility issues nor evidentiary conflicts.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

D. *Application*

As noted above, the trial court recognized that the "people under 26 may be more impulsive," but it found that Young's rapes "were not crimes of impulse," but were instead "crimes of domination." The court further found

14

that the crimes "were planned" and they "were deliberate." Ample evidence was presented during the trial on which the trial court could have reasonably reached such findings, including the manner in which the offenses were carried out (such as Young's providing of alcohol to the minor victims) and the repeated nature of his conduct. (See *ante* at pp. 3–5.)

In his opening brief, Young argues that "[t]he experience of having his parents send him away from home at a young age, enduring emotional abuse by school officials who were supposed to provide for him, and continually failing to meet his parents' expectations adversely affected [his] sense of self and, thus, his neurological development, including his sexual development." Young also maintains that, in committing the rapes, he "acted immaturely and impetuously by pursuing superficial sexual encounters without any thought or care for his partner" and that in his "undeveloped brain, sex was never about emotional connection or shared experience but rather about gratifying his own unmet emotional needs." We are not persuaded that such reasoning demonstrates a lack of substantial evidence for the trial court's finding that Young's youth was not a contributing factor to his commission of the offenses.

To begin with, the explanation that Young offers for his commission of the offenses that we summarize above is premised on a psychological report that was, in turn, based in significant part on Young's own statements. The trial court was not required to credit this explanation, particularly since the psychological report itself did not provide this explanation for Young's

commission of the offenses.[4]  Further, the trial court could reasonably have found that being sent away from home, enduring emotional abuse, and failing to meet parental expectations are not factors that can be equated to "youth" for purposes of section 1170, subdivision (b)(6)(B).  (Cf. *Lopez-Tapia, supra*, 120 Cal.App.5th  at p. 700 [rejecting defendant's argument "that section 1170[, subdivision] (b)(6) requires a court to find that childhood trauma is a contributing factor to any offense accomplished through gang connections simply because trauma may have been a contributing factor in the defendant joining a gang in the first place"].)  The trial court was not required to conclude that anything that might happen to a person in youth is "youth" for purposes of this contributing factor.  Notably, Young has not argued that he suffered "childhood trauma" within the meaning of section 1170, subdivision (b)(6)(A).

Nor are we persuaded by Young's assertion that, with respect to the rape of A.Q., "there are no facts reasonably inferring that the rape was in any way planned by [Young] considering he made no sexual advances when she went to the La Jolla cliffside with him and his friends and went to his home afterward" on a separate occasion before the rape.  A.Q. testified both that she believed that she had been drugged and that multiple people assisted Young in his commission of the rape by holding her down during the offense. The trial court could reasonably find that the rape was planned.  Moreover, even assuming that, on a separate occasion before the rape, Young made no sexual advances while at a La Jolla cliffside and the victim went to Young's

---

4      In his reply brief, Young acknowledges that the People are "correct that the psychological evaluation did not expressly opine on the 2017 and 2019 incidents in a direct, offense-by-offense causation format."

home after that visit, neither circumstance establishes that Young did not plan the charged rape.[5]

Similarly, we are unpersuaded by Young's argument with respect to count 2, involving the rape of M.B., that the trial court was required to find that Young's acts bore the "hallmark features of youth." Specifically, Young contends that he "immaturely believed" that M.B.'s friend, A.M., had offered him an "invitation for sex," and that "[w]hen the sex proved to be unsatisfying," he "impetuously grabbed [M.B.]," and "proceeded to have sex with her." Simply stated, the trial court was not required to view M.B.'s rape in the way Young describes it in his brief. Instead, the trial court could reasonably find that Young planned the rape of M.B. and the assault of A.M., two minor victims, particularly given the existence of evidence that Young engaged in similar behavior on multiple occasions.

In his reply brief, Young emphasizes his argument that the trial court's decision was based on a "misunderstanding of the hallmarks of youth and how they apply to him." Specifically, Young contends that the trial court adopted a "categorical 'planned therefore not youth-related,' reasoning" that "effectively demanded a stronger causal showing than the statute contemplates." Again, we are not persuaded.

To begin with, the trial court's remarks are consistent with judicial opinions pertaining to the sentencing of juvenile defendants that have repeatedly emphasized impulsivity as a feature of youth that may serve to mitigate culpability for criminal behavior. (See, e.g., *Miller v.*

---

[5] In describing the outing before the night of the charged rape, Young testified that he had sex with A.Q. at his residence after going to the La Jolla cliffside.

17

*Alabama* (2012) 567 U.S. 460, 461 [juveniles " ' "lack of maturity" ' and ' "underdeveloped sense of responsibility" ' lead to recklessness, impulsivity, and heedless risk-taking"].) Thus, in considering whether the evidence supported a finding that Young's youth was a contributing factor under section 1170, subdivision (b)(6)(B), the trial court reasonably considered whether the offenses were "crimes of impulse."

Finally, while Young views the trial court's remarks as evincing "categorical" reasoning as to the nature of evidence that demonstrates youth as a contributing factor, we view the trial court's statements as merely brief remarks summarizing the reasons for why it declined to find that Young's youth was a contributing factor in the commission of counts 1 and 2. Young's attempt to parse the trial court's explanatory comments do not convince us that there is a lack of substantial evidence to support that court's refusal to find that his youth was a contributing factor in his commission of the charged forcible rapes.

## DISPOSITION

The judgment is affirmed.


BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.

18